UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GOVERNMENT ACCOUNTABILITY PROJECT, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Civil Action No. 07-01702 (CKK) |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; U.S. FOOD AND DRUG ADMINISTRATION, | ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' STATUS REPORT**

Defendants, the United States Food and Drug Administration ("FDA") and the United States Department of Health and Human Services (collectively, "the government"), submit this Status Update as directed in the Court's Memorandum Opinion and corresponding Order, both dated August 4, 2008. The Court's Opinion stated, in relevant part:

> In recognition of the substantial backlog of pending FOIA requests facing [the FDA's] DIDP[1], and DIDP's system for processing those requests, the Court shall not order Defendants to produce documents responsive to Plaintiff's FOIA request forthwith. Instead, as set forth in the Order accompanying this Memorandum Opinion, the Court shall require Defendants to file a status report with the Court on or before September 5, 2008, advising the Court as to the volume of the requested records, where Plaintiff's FOIA request currently stands in the processing queue, i.e., the date by which Defendants expect to begin processing Plaintiff's FOIA request, and how long they expect it will take to process Plaintiff's request, so that the Court can set an appropriate processing schedule.

Mem. Op. at 16; see also Order of Aug. 4, 2008.

---

[1] Division of Information Disclosure Policy.

In accordance with a literal reading of the Court's order, and consistent with its practice of processing requests on a first in and first out basis, the DIDP of FDA's Center for Drug Evaluation and Research ("CDER"), estimates that plaintiff's FOIA request will rise to the top of the Complex Track in June 2009 and that it will take two months to process the request. The reasoning for this estimate was explained in detail in the briefs and declarations filed in support of the government's motion for a stay of proceedings.

If, however, the Court intended its Order to require DIDP to move plaintiff's FOIA request to the top of the processing queue, ahead of other FOIA requests that have been waiting longer in the queue, then DIDP can begin processing plaintiff's FOIA request immediately upon an order to do so by this Court. DIDP could then produce documents to plaintiff on a rolling basis commencing on or about thirty (30) days after the date on which the Court orders FDA to begin processing plaintiff's FOIA request, and could complete plaintiff's FOIA request thirty (30) days thereafter (i.e., sixty (60) days after the date on which the Court orders FDA to begin processing), for the reasons explained below.

Plaintiff's FOIA request seeks two categories of documents concerning two clinical studies involving the drug Cipro (ciprofloxacin): (1) all goniometry (joint angle motion measurement) data pertaining to domestic and foreign clinical trials studies 1001169 and 100201 ("Goniometry Data"); and (2) all Division of Scientific Investigations ("DSI") reports and records, domestic and foreign, concerning all DSI inspections pertaining to clinical trial studies 100169 and 100201 ("Inspection Records").

As an initial matter, DIDP has determined that there are two general categories of records responsive to plaintiff's FOIA request: (1) DSI records regarding inspections of two clinical investigators involved with Cipro clinical trial study 100169; and (2) clinical gait and range of motion safety data submitted as electronic datasets to four approved Cipro New Drug Applications ("NDAs").

DIDP has identified on a preliminary basis approximately 200 pages of responsive Inspection Records. DIDP will need to conduct a page-by-page, line-by-line review of these records to ascertain whether any information is exempt from disclosure under the FOIA. FDA can complete its review of all of the Inspection Records and release all non-FOIA exempt Inspection Records to plaintiff Government Accountability Project ("GAP") by thirty (30) days after the date on which the FDA begins processing plaintiff's FOIA request.

DIDP has identified on a preliminary basis four electronic datasets (hereafter, "Raw Safety Datasets"), comprising approximately 100,000 kilobytes of data, containing the Goniometry Data. The Raw Safety Datasets were submitted to each of four approved Cipro NDAs at issue. FDA estimates it will take up to sixty (60) days, commencing on the date on which the FDA begins processing plaintiff's FOIA request, to ascertain which Raw Safety Datasets may be releasable under the Federal Food, Drug, and Cosmetic Act ("FDCA") and its implementing regulations because, as further described below, the determination of whether the Raw Safety Datasets are releasable is extremely complex.

DIDP will need to work with CDER's Office of Generic Drugs ("OGD") and FDA's Office of the Chief Counsel ("OCC") to determine the releasability of the Raw Safety Datasets. Although FDA generally considers sets of raw data (including safety

data) to be confidential commercial information that is exempt from disclosure under the FOIA, FDA's regulations state that raw data may be releasable under certain limited circumstances. Specifically, with regard to approved NDAs, the governing regulation states, in pertinent part:

> All safety . . . data and information which have been submitted in an application and which have not previously been disclosed to the public are available to the public, upon request, at the time any one of the following events occurs unless extraordinary circumstances are shown: . . .
> (5) For applications submitted under [21 U.S.C. § 355(b) - new drug applications ("NDAs")], the effective date of the approval of the first abbreviated application submitted under [21 U.S.C. § 355(j) – Abbreviated New Drug Application ("ANDA")] which refers to such drug, or the date on which the approval of an [ANDA] which refers to such drug could be made effective if such an abbreviated application had been submitted.

21 C.F.R. § 314.430(f).[2] Thus, whether Raw Safety Datasets from NDAs may be disclosed depends whether FDA has already, or could now, approve an ANDA that references the drug that is the subject of the approved NDA. Moreover, even if FDA has already, or could now, approve such an ANDA, the Raw Safety Datasets may

---

[2] The Drug Price Competition and Patent Term Restoration Act of 1984 (the "Hatch-Waxman Amendments"), codified at 21 U.S.C. § 355 and 35 U.S.C. §§ 156, 271, 282, amended the FDCA to include a statutory provision corresponding to 21 C.F.R. § 314.430(f)(5):

> Safety . . . data and information which has been submitted in [an NDA] and which has not previously been disclosed to the public shall be made available to the public, upon request, unless extraordinary circumstances are shown . . . (5) upon the effective date of the approval of the first [ANDA] which refers to such drug or upon the date upon which the approval of an [ANDA] which refers to such drug could be made effective if such an application had been submitted.

21 U.S.C. § 355(l).

nevertheless be protected from release due to the manufacturer's showing of "extraordinary circumstances."

FDA has determined that for three out of the four approved Cipro NDAs containing the Raw Safety Datasets, an ANDA has been approved that references a drug from one of those approved NDAs. However, for the one approved NDA that does not have an approved ANDA (the "Cipro Oral Suspension"), FDA must evaluate whether FDA could theoretically approve an ANDA for such drug. The Hatch Waxman Amendments permit the submission and approvals of ANDAs for generic versions of approved drug products, but the timing of ANDA approvals depends, in part, on patent and exclusivity protections for the approved drug. See generally 21 U.S.C. § 355(j). Thus, for the Cipro Oral Suspension, FDA will need to gather all of the relevant patent and exclusivity data and determine whether any patents or exclusivities would block FDA approval of an ANDA.

In addition, OCC will need to enter into discussions with the drug manufacturer regarding the status of its Raw Safety Datasets under 21 C.F.R. § 314.430(f)(5), including whether the company believes "extraordinary circumstances" warrant FDA's continued protection of its information from disclosure. This analysis is complicated by the fact that the Cipro Oral Suspension was one of the drugs used in the two clinical trial studies at issue and the Goniometry Data for the clinical trial subjects who received the Cipro Oral Suspension is intertwined with the data for the subjects who received the other study drugs.

Thus, because DIDP's analysis of whether the Raw Safety Datasets are releasable is complex and requires both the coordination of different offices within FDA and

5

discussion with a drug manufacturer, DIDP will need up to sixty (60) days from the date on which it begins processing plaintiff's request to complete its review of the Raw Safety Datasets. This time frame would allow DIDP to: (1) ascertain which Raw Safety Datasets may be releasable under FDA's statute and regulations; (2) complete discussions with the drug manufacturer whose Raw Safety Datasets are at issue regarding whether any "extraordinary circumstances" would warrant the continued protection of information that otherwise would be subject to release; and (3) redact any non-disclosable Raw Safety Datasets. The Raw Safety Datasets and an index pursuant to Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973), explaining what has been redacted or withheld from disclosure from the Inspection Records and the Raw Safety Datasets, can be produced to GAP no later than sixty (60) days from the date on which the FDA begins processing GAP's request.

Date: September 4, 2008

              Respectfully submitted,

              /s/ Jeffrey A. Taylor /dvh
              JEFFREY A. TAYLOR, D.C. BAR #498610
              United States Attorney


              /s/ Rudolph Contreras /dvh
              RUDOLPH CONTRERAS, D.C. BAR #434122
              Assistant United States Attorney

/s/ Beverly M. Russell
BEVERLY M. RUSSELL, D.C. BAR #454257
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
 Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C.  20530
Ph: (202) 307-0492
Fax: (202) 514-8780
E-mail:  beverly.russell@usdoj.gov

Of Counsel:

THOMAS R. BARKER
Acting General Counsel

GERALD F. MASOUDI
Associate General Counsel
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation

SHOSHANA HUTCHINSON
Associate Chief Counsel, Litigation
U.S. Dept. of Health & Human Services
Office of the General Counsel
5600 Fishers Lane
Rockville, MD  20857
301-827-8579